Mr. Chief Justice Shaékey
delivered the opinion of the court.
The complainant Parchman filed his bill to enjoin the sale of a tract of land under a deed of trust. The case seems to be in substance this: In 1835, complainant’s intestate purchased the land of McKinney for $6500 ; he paid $2000 in cash, and executed two promissory notes for the residue, payable on the 1st of January, 1836, and 1837, expressing to have been given for money loaned, and containing a reservation of ten per cent, interest. Yarious payments, renewals and separate notes for interest were afterwards made, and ultimately a new note for $2500 was given, and also two other notes, one for $900, and and the other for $400. At this settlement the deed of trust was given. Complainant alleges that he has paid between $5000 and $6000, and that respondent still claims the amount of the three notes; but respondent only admits payments to the amount of about $4000. It seems difficult to follow up the various changes and renewals of the securities, nor is it necessary. It is agreed that the original notes were made as already stated ; that the interest was not paid, but a note given for it, also to draw ten per cent, interest, and that this mode of calculating and securing interest was carried on until 1844. That payments made before that time were generally applied in discharge of the *637 interest first. The vice-chancellor made an order that an account should be taken, in which McKinney should be allowed eight per cent, interest, and from that order this appeal was prayed.
There can be no difficulty in deciding, that the transaction was usurious. A similar contract was held to be so in Torrey v. Grant, 10 S. & M. 89. But the question is, shall the creditor be allowed any interest? His right to it is maintained on the principle that the party who resorts to a court of chancery to be relieved against a usurious contract, must pay the principal and legal interest; that the excess above legal interest is the extent to which the court will go in giving relief. That such is the rule adopted and followed by the current of decisions is not to be doubted; but can it be applied to the present case ? The rule originated under the rigid provisions of the statute of 12 Anne, which made all usurious contracts void, and imposed heavy penalties on the usurer; but our law is entirely different. Let us see then how far the reasons which gave rise to this rule, will apply in this altered state of the law. It has its foundation in the discretion which the courts of equity are said to have possessed in granting or withholding relief. On this foundation, and on this only can it rest. The cases in which relief was sought in a court of chancery, were generally, and perhaps invariably, cases in which a remedy at law might have been had, or in which discovery was sought to sustain the defence at law, and hence it has been said that the court was not positively bound to interfere, but has a discretion on the subject, and may prescribe the terms on which relief will be given. Having that discretion, the rule was applied, that he who seeks equity must do equity. It was regarded as against conscience, that the borrower should pocket the money loaned, without being compelled to return what was really due, as that would be to make the statute which was intended to prevent fraud, the instrument of fraud. But at the same time, equity would not assist the lender, as that would be aiding a wrong-doer. See 1. Story, Eq. Jur. 322, § 301, 302; 1 Fonbl. 24, note (h); Rogers v. Rathbun, 1 Johns. Ch. R. 367.
*638 Now mark the difference. Our statute docks the interest only, and leaves the right to the principal unimpaired ; and it inflicts no punishment on the lender. With regard to the discretion of the court in a case like this, it is certainly not clear that it can have any, whatever may be said in ordinary cases, unless indeed we say, that in every case a court of chancery has no other rule than discretion. The complainant had no remedy at law. The parties had provided a summary remedy, to be pursued without the aid of a court. If there was any illegality in the contract, it could only be set up against remedy in a court of chancery. From the peculiar character of a deed of trust, and the mode of proceeding to enforce it, relief against it is a subject of original and primary chancery jurisdiction; and it is also exclusive, for a court of law cannot reach it. This party then is not to be treated as though he had been negligent in making his defence in another tribunal. He stands on the same ground that a defendant does, who is making his defence at law when sued on a usurious- contract. He makes his ground of relief in the appropriate tribunal, the only tribunal that can hear it, and at the first opportunity. He is not therefore a proper object for such terms as the court in its discretion may think proper to impose. But again, it is not against conscience for him to seek this remedy. He has not the money of the defendant, there was no loan of money. But above all, the statute made to prevent usurious contracts is protected ; its end and object accomplished ; it is not made the instrument of fraud. The general rule is, that courts of equity must follow the law, and they cannot depart from it without some obvious reason. For these reasons it would seem, that the general rule, requiring the party to pay the principal and legal interest, cannot apply in this case. And this accords with the opinion of the chancellor in Monks v. Morris, 4 Hen. & Mun. 463, which was a very similar case. The bill was brought for relief against deeds of trust, which the trustee was about to carry into effect, on the ground of usury, and against the same objections here raised, the party was held not to be entitled to interest.
Perhaps this question might have been made to rest entirely *639 on a fair construction of the statute. H. & H. Dig. 374. After providing the rate of ten per cent, interest for a loan of money, and so expressed on the face of the instrument, the statute proceeds, “ Provided that if any contract, bond, or note, founded on any other consideration than the bona, fide loan of money, shall fraudulently and deceitfully express therein that the same is entered into or given for money lent, and specify a greater rate of interest than is allowed by this act, if such fraud or deception shall be discovered in any suit or action either at law or in equity, no interest or premium whatever shall be allowed or recovered on such fraudulent contract, bond, or note, but the principal sum only shall be recovered.” This provision seems to be sufficiently broad to extend to actions brought by either party, and it expressly extends to courts of equity, and thus furnishes a law for those courts, and we have precisely the description of case described by the statute; one that fraudulently and deceitfully expresses on its face that it was given for money lent.
The only ground for any doubt in the case is, whether the debtor, having made sundry payments of interest, is now entitled to have those payments applied to the principal, as it is a rule both at law and in equity, that nothing but the excess can be recovered back. 1 Story, Eq. Jur. § 302; Fitzroy v. Gwillim, 1 Term Rep. 153; 1 Fonbl. 246, (note k). The recovery of the excess may be had in an action for money paid, which being an equitable action, courts of law apply the equity principle, and will not allow a party to recover back what he has voluntarily paid, without paying that which he might legally have contracted for. But the principle does not seem to be applicable in the present case, as it is exhibited by the record. In the first place, the transaction is, to a certain extent, yet an open one, or the contract to pay the money is yet in part executory; the transaction is unfinished. When an illegal contract is executed, the consideration cannot, in general, be recovered back; but when the action is in disaffirmance of an illegal executory contract, the money paid may be recovered. 2 Comyn on Contracts, 109. This principle is not entirely inapplicable in the present *640 case, as the money or consideration has not been entireJy paid.
But a second reason is, that by the renewed contract the principal and interest seem to have been mixed up. There is no distinguishing between that which was principal and that which was interest, so far as the record shows. But a still more conclusive reason is, that it does not appear whether the payments made were intended by the party who made them as payments of principal or of interest It must be made to appear that they were made as payments of interest; for although it be true that by law partial payments must be first applied to the interest, and the party receiving them would have a right so to apply them, yet this would not be the case with illegal interest. The law does not apply payments to illegal purposes..
The decree is wrong for another reason. It gives a right to recover legal interest, yet unpaid, on the principal due, when the law cuts off all interest, as the party contracted for ten per cent. And it gives legal interest also on a note given for interest. If that note.was taken for illegal interest, or for interest on a contract drawing more than eight per cent, it is void.
Decree reversed', and cause remanded.